Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROHIT GILL<br><br>Petitioner,<br>v.<br>Warden of the Desert View Facility; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

**INTRODUCTION**

1. Petitioner Gill respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his ongoing unlawful detention and seeking his immediate release from custody. This case concerns the Government's abrupt seizure and detention of a noncitizen who lawfully entered the United States on a B-2 nonimmigrant visa, has no criminal history whatsoever, possesses employment authorization, maintains stable employment and substantial community ties, and was living openly in the United States when ICE officers encountered and detained him at Los Angeles International Airport. Respondents deprived Petitioner of his physical liberty without advance notice, without an individualized determination that immediate detention was necessary, and without providing any pre-

deprivation hearing or meaningful opportunity to be heard.

2. Petitioner is a native and citizen of India. He lawfully entered the United States on June 20, 2023 pursuant to a B-2 nonimmigrant visa. Petitioner subsequently remained in the United States beyond the period authorized by his admission. DHS now charges him solely under INA § 237(a)(1)(B) as a nonimmigrant who remained in the United States for a time longer than permitted.

3. Petitioner has no criminal history whatsoever. He has established a stable life in the United States, maintains stable employment pursuant to employment authorization issued by DHS, and has integrated himself into his community. Nothing in Petitioner's background suggested that he presented a danger to the community or required immediate custodial intervention.

4. On September 10, 2026, Petitioner was traveling through Los Angeles International Airport when ICE officers approached and stopped him. Petitioner was not engaged in criminal activity, had not threatened anyone, and had done nothing suggesting that he was attempting to flee from immigration authorities. The officers demanded identification, and Petitioner cooperated by producing his driver's license and employment authorization document.

5. Despite Petitioner's cooperation, ICE officers detained him and prevented him from continuing his travel. Petitioner asked why he was being detained, but the officers did not provide him with a meaningful explanation for the seizure or identify any circumstance requiring his immediate incarceration.

6. Four days later, on September 14, 2026, DHS served Petitioner with a Notice to Appear charging him under INA § 237(a)(1)(B) based upon his alleged visa overstay. The charge confirms the posture of this case: Petitioner is an admitted noncitizen whom DHS alleges remained beyond his authorized period of stay. The Notice to Appear does not charge Petitioner with unlawful entry and does not allege any criminal conduct.

7. Petitioner's detention occurs against the backdrop of DHS's July 8, 2025 Interim Guidance concerning the detention and custody treatment of certain noncitizens. Respondents' application of that policy cannot eliminate the statutory distinction between applicants for admission and noncitizens, like Petitioner, who were previously admitted to the United States and are now charged as removable under INA § 237(a)(1)(B).

8. That distinction is particularly significant in light of *Matter of Yajure Hurtado* and *Matter of Q. Li*. Those decisions address the statutory detention framework applicable to particular categories of noncitizens and reinforce the importance of determining a noncitizen's actual statutory posture rather than mechanically applying a categorical detention rule divorced from the circumstances of the individual case. Petitioner lawfully entered pursuant to a B-2 visa and is now charged with removability under INA § 237(a)(1)(B); he is not charged as an arriving alien or as an applicant for admission based upon an unlawful entry.

9. Whatever authority Respondents may possess to initiate removal proceedings or seek Petitioner's detention, that authority does not answer the separate constitutional question presented here: whether the Government may abruptly deprive an individual of physical liberty without providing constitutionally adequate procedures before doing so when pre-deprivation process was practicable.

10. Prior to September 10, 2026, Respondents provided Petitioner no notice that they intended to take him into custody, no explanation of the factual basis upon which detention was contemplated, no individualized determination that he posed a danger or flight risk requiring immediate detention, no opportunity to present evidence demonstrating that detention was unnecessary, and no hearing before a neutral decisionmaker.

11. Nor do the circumstances of Petitioner's arrest suggest that providing process beforehand was impracticable. Petitioner was not attempting to evade DHS. He was traveling openly, possessed

government-issued identification and employment authorization, cooperated when approached, and provided the documents requested by the officers. Respondents identify no emergency or exigent circumstance requiring them to incarcerate Petitioner immediately and provide process only afterward.

12. Instead, Respondents seized Petitioner first and left any opportunity to challenge the necessity of detention until after his physical liberty had already been taken. That sequence is the constitutional injury challenged in this Petition. The Government's authority to place Petitioner in removal proceedings does not confer unlimited authority to dispense with the procedural protections of the Fifth Amendment when depriving him of his liberty.

13. Petitioner therefore challenges not merely the conditions or duration of his detention, but the constitutionally deficient manner in which Respondents deprived him of liberty in the first instance. Because Respondents failed to provide constitutionally adequate pre-deprivation process before taking Petitioner into custody, his continued detention perpetuates the unlawful deprivation.

14. Petitioner accordingly seeks a writ of habeas corpus restoring the liberty of which he was deprived without constitutionally adequate process. The appropriate remedy is immediate release from custody and restoration of the status quo preceding Respondents' unconstitutional seizure, together with such further relief as this Court deems just and proper.

## JURISDICTION

15. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

16. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

17. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq*., the

Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

18. Venue is proper because Petitioner is detained in Desert View Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

19. Respondent Warden is sued in his official capacity as Warden of the Desert View Facility. Respondent Warden is the physical custodian of Petitioner.

20. Respondent David Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

21. Respondent Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

22. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

23. Petitioner Gill is a native and citizen of India.

24. On June 20, 2023, Petitioner lawfully entered the United States pursuant to a valid B-2 nonimmigrant visitor visa.

25. Petitioner was therefore inspected and admitted to the United States as a nonimmigrant.

26. Petitioner subsequently remained in the United States beyond the period authorized by his B-2 admission.

27. Petitioner has resided openly in the United States and has established substantial ties to his community.

28. Petitioner possesses employment authorization issued by DHS and has maintained stable employment in the United States.

29. Through his employment and residence in the United States, Petitioner has established stability and integrated himself into his community.

30. Petitioner has no criminal history whatsoever. He has never been convicted of, charged with, or arrested for any criminal offense.

31. Prior to September 10, 2026, DHS had never informed Petitioner that it considered him a danger to the community or a flight risk requiring immediate detention.

32. Nor had DHS provided Petitioner with advance notice that it intended to take him into immigration custody.

33. On September 10, 2026, Petitioner was traveling through Los Angeles International Airport in Los Angeles, California.

34. While Petitioner was at the airport, ICE officers approached and stopped him.

35. At the time ICE officers approached him, Petitioner was not engaged in any criminal activity or other unlawful conduct warranting an immediate seizure.

36. The ICE officers demanded that Petitioner produce identification documents.

37. Petitioner cooperated with the officers and produced his driver's license and valid employment authorization document.

38. Petitioner did not attempt to flee, evade the officers, conceal his identity, or otherwise interfere with the officers.

39. Despite Petitioner's cooperation, ICE officers detained him and prevented him from continuing his travel.

40. Petitioner asked the officers why he was being detained.

41. The officers did not provide Petitioner with a meaningful explanation for his detention or identify any individualized reason why his immediate incarceration was necessary.

42. Prior to taking Petitioner into custody, Respondents did not provide him with advance notice that detention was being contemplated.

43. Respondents did not provide Petitioner with written notice of the factual basis upon which they believed immediate detention was necessary.

44. Respondents did not provide Petitioner with notice of any evidence purportedly demonstrating that he presented a danger to the community or a risk of flight.

45. Respondents did not provide Petitioner with an opportunity to contest the necessity of detention before taking him into custody.

46. Respondents did not provide Petitioner with an opportunity to submit evidence concerning his employment, community ties, immigration history, lack of criminal history, or any other circumstances relevant to whether detention was necessary.

47. Respondents did not provide Petitioner with a hearing before a neutral decisionmaker before depriving him of his physical liberty.

48. Respondents likewise did not provide Petitioner with any other meaningful pre-deprivation procedure through which he could contest the necessity of his detention.

49. Nothing about the circumstances of Petitioner's encounter with ICE made such process

impracticable. Petitioner was traveling openly, possessed government-issued identification and employment authorization, and cooperated with the officers when approached.

50. Petitioner was not attempting to evade immigration authorities, did not attempt to flee from the officers, and did not engage in conduct presenting an immediate danger to the public.

51. Nevertheless, Respondents elected to incarcerate Petitioner first without providing him an opportunity to challenge the necessity of that deprivation beforehand.

52. On September 14, 2026, four days after Petitioner was taken into custody, DHS served Petitioner with a Notice to Appear.

53. The Notice to Appear charges Petitioner under INA § 237(a)(1)(B), alleging that after admission as a nonimmigrant he remained in the United States for a time longer than permitted.

54. The Notice to Appear therefore treats Petitioner as a previously admitted noncitizen charged with removability based upon an alleged visa overstay.

55. The Notice to Appear does not charge Petitioner as an arriving alien or allege that he entered the United States without inspection or admission.

56. The Notice to Appear does not allege that Petitioner committed any criminal offense.

57. The Notice to Appear likewise identifies no criminal conduct, public-safety concern, or other circumstance demonstrating that Petitioner posed a danger to the community requiring immediate detention.

58. Respondents' detention of Petitioner occurs following DHS's July 8, 2025 Interim Guidance concerning the detention and custody treatment of certain noncitizens.

59. Petitioner's immigration posture, however, is materially different from that of a noncitizen seeking admission at the border or charged with entering without inspection. Petitioner was lawfully admitted pursuant to a B-2 visa and is charged with removability under INA § 237(a)(1)(B) based upon

remaining beyond his authorized period of admission.

60. The statutory custody framework must therefore be applied consistently with Petitioner's actual immigration posture, including the principles addressed in *Matter of Yajure Hurtado* and *Matter of Q. Li*, rather than through a categorical rule that disregards his prior lawful admission.

61. At no time before September 10, 2026 did Respondents provide Petitioner with a pre-deprivation hearing or other meaningful opportunity to demonstrate why taking him into physical custody was unnecessary.

62. Respondents instead deprived Petitioner of his liberty first and left any process concerning the necessity of detention until after the deprivation had already occurred.

63. As a direct result, Petitioner has been removed from his employment and community and remains deprived of his physical liberty despite his lack of criminal history and the absence of any pre-deprivation determination that immediate detention was necessary.

64. Petitioner remains in Respondents' custody and continues to suffer the loss of his physical liberty as a direct result of Respondents' actions.

65. Petitioner seeks restoration of the liberty Respondents deprived him of without constitutionally adequate pre-deprivation process and his immediate release from custody.

## STATUTORY FRAMEWORK

66. Congress has authorized the Department of Homeland Security ("DHS") to initiate removal proceedings and, under specified circumstances, to arrest and detain noncitizens during the pendency of those proceedings. See 8 U.S.C. §§ 1225, 1226, 1229a, 1231.

67. Petitioner was lawfully admitted to the United States on June 20, 2023 pursuant to a B-2 nonimmigrant visitor visa. On September 14, 2026, Respondents served Petitioner with a Notice to Appear charging him under INA § 237(a)(1)(B) as a nonimmigrant who remained in the United States beyond the

period authorized by his admission. Petitioner's removal proceedings remain pending.

68. Petitioner does not challenge Congress's general authority to authorize immigration detention or ask this Court to adjudicate the merits of the removal charge contained in his Notice to Appear. Petitioner does, however, rely upon his undisputed prior admission to the United States and DHS's decision to charge him under INA § 237(a)(1)(B) in establishing the statutory and constitutional framework governing his detention. Petitioner was admitted pursuant to a B-2 nonimmigrant visa and is charged as a previously admitted noncitizen who remained beyond his authorized period of stay; he is not charged as an arriving alien or as a noncitizen who entered without inspection.

69. Rather, this case presents a straightforward constitutional question: whether federal officers may stop, seize, and incarcerate an individual without complying with the Fourth Amendment's prohibition against unreasonable seizures and the Fifth Amendment's guarantee that no person shall be deprived of liberty without due process of law.

70. The Immigration and Nationality Act does not exist outside the Constitution. Although Congress has authorized immigration detention in appropriate circumstances, neither the INA nor any regulation promulgated thereunder authorizes federal officers to disregard the constitutional limitations imposed by the Fourth and Fifth Amendments.

71. The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Those protections apply to civil immigration arrests. See, e.g., Arizona v. United States, 567 U.S. 387, 413 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."); INS v. Delgado, 466 U.S. 210, 215 (1984) (recognizing that Fourth Amendment protections apply during immigration enforcement operations).

72. The Fifth Amendment likewise provides that no person shall "be deprived of life, liberty,

or property, without due process of law." U.S. Const. amend. V. The Supreme Court has repeatedly recognized that these constitutional protections extend to noncitizens physically present within the United States, regardless of their immigration status. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Demore v. Kim, 538 U.S. 510, 523 (2003).

73. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas, 533 U.S. at 690. Before the Government deprives an individual of that liberty, due process ordinarily requires notice and a meaningful opportunity to be heard before a neutral decisionmaker unless extraordinary circumstances make pre-deprivation process impracticable. See Mathews v. Eldridge, 424 U.S. 319 (1976); Fuentes v. Shevin, 407 U.S. 67 (1972); Hamdi v. Rumsfeld, 542 U.S. 507 (2004).

74. Nothing in the Immigration and Nationality Act authorizes Respondents to seize an individual in violation of the Fourth Amendment or to deprive that individual of physical liberty without the procedural protections guaranteed by the Fifth Amendment. Statutory authority to detain, if it exists, does not excuse compliance with constitutional requirements.

75. Accordingly, regardless of the statutory provision Respondents ultimately invoke to justify Petitioner's detention, Respondents were constitutionally required to conduct the seizure and detention in a manner consistent with the Fourth and Fifth Amendments. Petitioner's claims arise from Respondents' failure to comply with those constitutional limitations, not from any dispute concerning the ultimate merits of his removal proceedings.

76. Respondents instead stopped Petitioner without presenting legal process, immediately deprived him of his physical liberty, and incarcerated him without advance notice, without an individualized determination that immediate detention was necessary, and without providing any meaningful opportunity to be heard before the deprivation occurred. Those actions violated the Fourth and Fifth Amendments and render Petitioner's continued detention unlawful under 28 U.S.C. § 2241.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Petitioner's Procedural Due Process Rights

77. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.

79. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

80. In determining what process is constitutionally required before the Government deprives an individual of a protected liberty interest, courts balance: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation under the procedures employed and the probable value of additional procedural safeguards; and (3) the Government's interest, including the administrative burdens that additional procedures would impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

81. Each of the *Mathews* factors weighs heavily in Petitioner's favor.

82. First, Petitioner's interest in remaining free from physical restraint is among the most fundamental liberty interests protected by the Constitution.

83. Second, the risk of an erroneous deprivation was extraordinarily high because Respondents seized and incarcerated Petitioner without providing advance notice, without making any individualized determination that detention was necessary, and without affording Petitioner any meaningful opportunity to be heard before depriving him of his liberty. The value of additional procedural safeguards—including

notice, disclosure of the asserted basis for detention, and an opportunity to respond before a neutral decisionmaker—is substantial.

84. Third, Respondents possessed little, if any, governmental interest in dispensing with constitutionally required procedures. Petitioner had lawfully entered the United States, maintained a known residence, remained continuously employed pursuant to valid employment authorization, established substantial family and community ties, and had no criminal history. Respondents have identified no emergency, exigent circumstance, or other immediate necessity requiring Petitioner's summary detention without prior process.

85. Prior to detaining Petitioner, Respondents failed to provide:

a. advance notice that detention was being contemplated;

b. written notice identifying the factual basis for detention;

c. notice of any evidence supporting detention;

d. an individualized determination that detention was necessary;

e. an opportunity to present evidence;

f. an opportunity to contest the proposed detention; or

g. a hearing before a neutral decisionmaker.

86. On September 10, 2026, Petitioner was traveling through Los Angeles International Airport when ICE officers approached and stopped him. The officers demanded identification, and Petitioner cooperated by producing his driver’s license and employment authorization document. Despite Petitioner’s cooperation, Respondents took him into custody and prevented him from continuing his travel without first providing any meaningful pre-deprivation process.

87. At no point before Petitioner's detention did Respondents identify any criminal conduct, danger to the community, risk of flight, or other individualized circumstance requiring his immediate incarceration rather than the use of ordinary administrative procedures.

88. Petitioner requested an explanation for why he was being detained. Respondents nevertheless failed to provide a meaningful explanation or any opportunity for Petitioner to challenge the factual or legal basis asserted for his detention before his liberty was taken.

89. No extraordinary or exigent circumstance justified dispensing with pre-deprivation procedures. Petitioner was traveling openly, possessed government-issued identification and employment authorization, cooperated with the officers, made no attempt to flee or evade immigration authorities, and had no criminal history. Nothing occurring on September 10, 2026 made pre-deprivation notice and an opportunity to be heard impracticable.

90. Indeed, Respondents did not serve Petitioner with the Notice to Appear until September 14, 2026—four days after taking him into custody. That Notice to Appear charges Petitioner solely under INA § 237(a)(1)(B), based upon his alleged failure to depart after the expiration of the period authorized by his lawful B-2 admission. It alleges no criminal conduct or other circumstance requiring emergency detention.

91. Petitioner's statutory posture further demonstrates the need for an individualized assessment rather than categorical detention. Petitioner was inspected and admitted pursuant to a B-2 nonimmigrant visa and is now charged as removable under INA § 237(a)(1)(B). His detention therefore must be evaluated according to his actual statutory posture, including the principles addressed in *Matter of Yajure Hurtado* and *Matter of Q. Li*, rather than by mechanically treating him as an applicant for admission.

92. Respondents' July 8, 2025 Interim Guidance does not eliminate the constitutional protections independently guaranteed by the Fifth Amendment. Whatever authority Respondents may possess to initiate removal proceedings or seek Petitioner's detention, the Government remains obligated to provide constitutionally adequate procedures when depriving an individual of physical liberty.

93. The constitutional violation occurred when Respondents deprived Petitioner of his physical liberty without first providing constitutionally adequate procedural protections.

94. The constitutional injury alleged herein preceded any subsequent custody review. Once Respondents deprived Petitioner of his liberty without constitutionally adequate pre-deprivation procedures, a later custody proceeding could not retroactively provide the process Petitioner alleges was constitutionally required before the deprivation occurred.

95. By depriving Petitioner of his liberty without constitutionally adequate notice and a meaningful opportunity to be heard before the deprivation occurred, Respondents violated Petitioner's rights under the Due Process Clause of the Fifth Amendment.

96. Because Petitioner's continued detention flows directly from that unconstitutional deprivation, Petitioner seeks immediate release to restore the liberty he possessed before Respondents detained him without constitutionally adequate process.

**COUNT TWO**

**Violation of the Fourth Amendment**

**(Unreasonable Warrantless Seizure and Detention)**

97. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98. The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. Those constitutional protections apply to civil immigration enforcement actions conducted within the United States.

99. Federal immigration law likewise limits an immigration officer's authority to arrest a noncitizen without a warrant. Under 8 U.S.C. § 1357(a)(2), an immigration officer may make a warrantless immigration arrest only where the officer has reason to believe that the individual is in the United States in violation of law and "is likely to escape before a warrant can be obtained for his arrest."

100. On September 10, 2026, Petitioner was traveling through Los Angeles International Airport when ICE officers approached and stopped him.

101. At the time the officers approached him, Petitioner was not engaged in criminal activity, was not attempting to flee from immigration authorities, and had engaged in no conduct suggesting that he would escape before a warrant could be obtained.

102. ICE officers demanded that Petitioner produce identification documents. Petitioner cooperated and presented his driver's license and employment authorization document.

103. Petitioner remained cooperative throughout the encounter and made no attempt to flee, conceal his identity, evade questioning, or interfere with the officers.

104. Despite Petitioner's cooperation, ICE officers detained him and prevented him from continuing his travel.

105. Petitioner requested an explanation for his detention but was not provided a meaningful explanation identifying why his immediate warrantless arrest was necessary.

106. Respondents did not present Petitioner with a judicial warrant, administrative warrant, or other warrant authorizing his arrest.

107. Nor did Respondents identify any criminal offense, public-safety concern, attempted flight, obstruction, or other individualized circumstance requiring Petitioner's immediate warrantless arrest.

108. In particular, Respondents identified no facts establishing that Petitioner was "likely to escape before a warrant [could] be obtained" within the meaning of 8 U.S.C. § 1357(a)(2).

109. The circumstances known to the officers demonstrated the opposite. Petitioner was traveling openly, possessed government-issued identification and employment authorization, disclosed his identity when asked, cooperated with the officers, and made no attempt to flee or evade them.

110. Petitioner also had no criminal history whatsoever and maintained stable employment and community ties in the United States.

111. Respondents therefore had ample means to identify Petitioner and pursue ordinary immigration procedures. Nothing about the encounter established an exigency requiring immediate arrest before a warrant could be obtained.

112. The chronology further demonstrates the absence of an apparent need for summary arrest. Respondents detained Petitioner on September 10, 2026, but did not serve him with the Notice to Appear charging him under INA § 237(a)(1)(B) until September 14, 2026.

113. By stopping and arresting Petitioner without presenting a warrant, without identifying facts satisfying the statutory requirements for a warrantless immigration arrest under 8 U.S.C. § 1357(a)(2), and without an individualized factual basis demonstrating the necessity and reasonableness of the warrantless seizure, Respondents subjected Petitioner to an unreasonable seizure in violation of the Fourth Amendment.

114. Petitioner's physical custody resulted directly from that allegedly unlawful seizure, and he therefore seeks habeas relief from the continuing restraint on his liberty pursuant to 28 U.S.C. § 2241.

**COUNT THREE**

**Writ of Habeas Corpus (28 U.S.C. § 2241)**

115. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116. Petitioner is presently in the custody of Respondents and is restrained of his liberty in violation of the Constitution and laws of the United States.

117. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is in custody under or by color of the authority of the United States and is being held in violation of the Fourth and Fifth Amendments to the United States Constitution.

118. A petition for writ of habeas corpus is the traditional and appropriate mechanism through which a person may challenge the legality of executive detention and seek immediate release from unlawful custody.

119. As set forth above, Respondents seized Petitioner without complying with the requirements of the Fourth Amendment and deprived him of his physical liberty without providing the procedural protections guaranteed by the Due Process Clause of the Fifth Amendment.

120. Petitioner's continued detention is the direct and ongoing consequence of those constitutional violations. Because the Government obtained and continues to exercise physical custody over Petitioner through unconstitutional means, his continued detention is unlawful.

121. Petitioner does not challenge the Government’s authority to place him in removal proceedings or the merits of the charge contained in his Notice to Appear. Rather, Petitioner challenges the legality of the Government’s decision to seize and physically detain him in the manner alleged herein and seeks restoration of the liberty of which he was deprived without constitutionally adequate process.

122. Petitioner was lawfully admitted to the United States pursuant to a B-2 nonimmigrant visa and is charged under INA § 237(a)(1)(B) as a nonimmigrant who remained beyond the period authorized

by his admission. His Notice to Appear does not charge him as an arriving alien or allege an unlawful entry.

123. Respondents' authority to initiate removal proceedings against Petitioner does not independently resolve whether the manner in which they seized and detained him complied with the Fourth and Fifth Amendments.

124. A post-deprivation custody proceeding cannot retroactively provide the pre-deprivation procedures Petitioner alleges the Constitution required before Respondents deprived him of his liberty.

125. Unless this Court grants habeas relief, Petitioner will continue to suffer the loss of his physical liberty resulting from the constitutional violations alleged herein.

126. Accordingly, Petitioner respectfully requests that this Court issue a writ of habeas corpus directing Respondents to immediately release him from custody and grant such further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this Petition pursuant to 28 U.S.C. § 2241;

2. Issue a writ of habeas corpus declaring that Petitioner's seizure and continued detention violate the Fourth and Fifth Amendments to the United States Constitution;

3. Order Respondents to immediately release Petitioner from the custody of the Department of Homeland Security and Immigration and Customs Enforcement;

4. Enjoin Respondents from re-detaining Petitioner based upon the September 10, 2026 arrest absent compliance with the requirements of the Fourth and Fifth Amendments and any further lawful process required by the Constitution;

5. Award Petitioner his reasonable attorneys' fees and costs pursuant to the Equal Access to

Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

6. Retain jurisdiction to enforce the Court's judgment and any orders necessary to effectuate Petitioner's release; and

7. Grant such other and further relief as the Court deems just and proper.

Respectfully,

*/s/Gurpreet Kaur*
Gurpreet Kaur, Esq.
**Kaur Legal Group, PC**

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Desert View Facility and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 14th day of September, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.